IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| SHERICE SWAIN, | CASE NO. 1:24-cv-2224 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Plaintiff Sherice Swain filed a Complaint against the Commissioner of Social Security seeking judicial review of a decision denying her application for supplemental social security income. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 5. Following review, and for the reasons stated below, I affirm the Commissioner's decision.

**Procedural Background**

In August 2022, Swain protectively filed an application for supplemental social security income alleging a disability onset date in October 2019.[1] Tr. 213.

---

[1]    Generally, the disability onset date is the application date in Supplemental Security Income cases. *See* Soc. Sec. Ruling 83-20, 1983 WL 31249 (Jan. 1, 1983).

In October 2019, Swain applied for social security income benefits. Tr. 71. In October 2021, an administrative law judge issued a written decision following a hearing on Swain's application  founding that Swain was not eligible for benefits. *See* Tr. 72; *see also* Tr. 96 (Appeals Council letter denying

In pertinent part, Swain alleged that she was disabled and unable to work due to the following impairments: Psychosis, Obsessive Compulsive Disorder ("OCD"), Depression, Anxiety, and Attention Deficit Hyperactivity Disorder ("ADHD"). Tr. 234.

In June 2023, Swain requested a hearing. Tr. 134. Administrative Law Judge ("ALJ") Catherine Ma held a videoconference hearing in December 2023. Tr. 33–67. Swain appeared, testified, and was represented by counsel at the December 2023 hearing. Tr. 33. Qualified vocational expert Deborah Lee also testified. Tr. 60. In January 2024, the ALJ issued a written decision, which found that Swain was not entitled to benefits. Tr. 14–32.

In January 2024, Swain appealed the ALJ's decision to the Appeals Counsel. Tr. 209. In October 2024, the Appeals Counsel denied Swain's appeal, making the ALJ's January 2024 decision the final decision of the Commissioner. Tr. 1–6, *see* 20 C.F.R. § 404.981.

Swain timely filed this action in December 2024. Doc. 1. In her opening brief, Swain asserts the following two legal issues:

1. WHETHER THE ALJ CHERRY PICKED EVIDENCE AND MISSTATING EVIDENCE AND THUS ERRED BY FINDING THAT THE CLAIMANT DID NOT HAVE A PSYCHOTIC DISORDER THAT CONSTITUTES A SEVERE IMPAIRMENT.

---

further review). Swain does not discernably challenge that denial or otherwise present any claim related to that denial, so it is not further discussed.

     2.  WHETHER THE ALJ ERRED BY CHERRY PICKING THE FINDINGS BY THE CLAIMANT'S LONG-TERM MENTAL HEALTH PROVIDER.

Doc. 9, at 1.[2]

**Evidence**[3]

*Personal and Educational Evidence*

Swain was born in 1975 making her 47 years old at the time of filing and 44 years old at the alleged onset date. Tr. 103. In 2016, she completed a bachelor's degree in digital media. Tr. 235.

*Mental Impairments*[4]

In July 2022, Swain attended a medication management appointment with physician assistant Amanda Prince. Tr. 303. She reported that her symptoms were controlled "besides life stress." *Id*. Physician assistant Prince found that Swain's speech, thought content, thought process, and perception were all unremarkable; she had euthymic mood, appropriate demeanor, insight, and judgment, and a grossly intact memory. Tr. 306.

---

[2]     Swain's issue statements are reproduced as written.

[3]     The evidence described is generally limited to that cited in the parties briefing.

[4]     Swain only challenges the ALJ's evaluation of her mental impairments, so my discussion of the medical evidence is limited to the relevant record as cited by the parties.

In September 2022, Lashara Colvin, APN,[5] began providing medication management treatment. Tr. 389. She also observed that Swain exhibited pressured speech, had impaired recent memory, and had obsessions, but otherwise indicated unremarkable and normal objective findings. Tr. 391. Swain reported that "I have no concern with my medications right now" and Nurse Colvin maintained medications at their previously prescribed dosages. Tr. 392. Nurse Colvin remarked that Swain's symptoms were "consistent with Bipolar Disorder, GAD, OCD and ADHD." *Id.*

In November 2022, Nurse Colvin continued to provide medication-management treatment. Tr. 383. Swain reported a stable mood, sustained concentration, and no hallucinations. Tr. 383. She denied any agitation or irritability. Tr. 383. Nurse Colvin remarked that Swain was "polite and cooperative today" and indicated normal objective mental status findings. Tr. 383–85. Nurse Colvin noted that Swain had a stable mood and continued her medication regimen. Tr. 385.

In April 2023, Nurse Colvin conducted another medication management appointment. Tr. 473. Nurse Colvin noted that, all within the month of January, Swain was involved in a motor vehicle accident, had a neighbor pull a gun on her, and witnessed a tree fall on a contractor. Tr. 473. Swain rated

---

[5]     APN or APRN is an abbreviation for Advanced Practice Registered Nurse. *Advanced Practice Registered Nurse (APRN)*, OhioAPRN.com, http://www.ohioaprn.com/what-is-an-aprn-.html [https://perma.cc/69UR-XX65].

4

her anxiety as "10/10" and described auditory hallucinations in the form of a "whisper." Tr. 473. Nurse Colvin prescribed a trial dosage of a new medication for Swain's anxiety but denied Swain's request for another medication until Swain's weight could be assessed. Tr. 476. Nurse Colvin also recommended monthly appointments until Swain's symptoms stabilized. *Id.* Swain's active medical conditions listed in Signature Health records were updated to include PTSD. Tr. 475–76.

**Opinion Evidence**

*Counselor King's Evaluations*

In July of 2023, Swain's counselor, Lori L. King, LPC, completed a check-the-box medical source statement detailing Swain's mental functioning. Tr. 587. Counselor King checked boxes indicating marked limitations in Swain's ability to perform the following activities: identify and solve problems; sequence multi-step activities; use reason and judgment to make work related decisions; keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness; work at an appropriate pace; complete tasks in a timely manner; ignore or avoid distractions while working; work with others without interrupting or distracting them; sustain an ordinary routine and regular attendance at work; work a full day without needing more than allotted length of rest periods; adapt to changes; manage her psychological symptoms; and, make plans for herself independent of others. Tr. 587–88.

In April 2023, Counselor King completed a mental status exam form. Tr. 470. This form was comprised of fill-in-the-bubble selections and three comments. *Id.* Counselor King filled in bubbles indicating the following observations: neat appearance; tangential speech, normal eye contact; restless motor activity; and full affect. *Id.* She also indicated that Swain had a euthymic mood and was cooperative, with fair judgment and insight. *Id.* Counselor King noted that Swain had "difficulties w/ paranoia daily" but no suicidal or homicidal thoughts. *Id.* Counselor King commented that Swain "reports experiencing [auditory hallucinations] often, especially when stressed," marked that Swain's short-term memory was impaired, and stated that Swain was "highly distractable during sessions." *Id.*

*Counselor King's Letters*

The record also contains three letters submitted by Counselor King in support of Swain's application. In November 2022, Counselor King that based on Swain's current symptoms her diagnoses included: "schizoaffective disorder - bipolar type," OCD, and ADHD. Tr. 288. Counselor King also listed the symptoms underlying Swain's diagnoses, as: "cycling moderate – severe, depression symptoms, pressured speech, poor impulse control, auditory and visual hallucinations outside of mood cycles, persistent paranoia, repeated compulsions to reduce anxiety caused by obsessive cognitions, and difficulty with transitioning between tasks." *Id.* She specified that "Swain reports a considerable amount of time lost in attempting to transition between tasks due

6

to symptoms of OCD." *Id.* Based on Swain's "reported past attempts to maintain employment," which were unsuccessful, Counselor King concluded that "it is in my professional opinion that employment would not only be very difficult f[or] Ms. Swain but it will also add a significant amount of stress to Ms. Swain's life." *Id.*

In April 2023, Counselor King submitted a second letter. Tr. 468. This letter generally listed the same diagnoses and generally included the same list of self-reported symptoms to support those diagnoses. *Id.* In addition, however, Counselor King now included that "Swains current functioning include threats of possible agoraphobia" following "two situations that have been very stressful currently impacting her ability to leave her home." *Id.* Counselor King offered the same  "professional opinion" as before "that employment would not only be very difficult f[or] Ms. Swain but would also add a significant amount of stress to Ms. Swain's life." *Id.*

In December 2023, Counselor King provided a third letter. Tr. 625. This letter is virtually identical to her April 2023 letter. *Id.*

*State Agency Reviewers*[6]

In January 2023, state agency psychological consultant, Jennifer Swain, reviewed the record and found that Swain had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself, and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. Tr. 106. Based on evaluation of the current record, she concluded that the functional limitations included in an earlier ALJ's decision remained appropriate. Tr. 106–7.

In May 2023, a second state agency psychological consultant, Irma Johnston, Psy.D., reviewed the record. Tr. 112–14. She concurred with the previous state agency assessment and agreed that the limitations from the 2021 ALJ's decision remained appropriate. Tr. 114–16.

**Hearing Testimony**

In December 2023, Swain testified at a telephonic hearing before the ALJ. Tr. 33. Swain testified that she had lived by herself for the past five years. Tr. 39–40. She explained additionally that she completed her bachelor's degree in digital media over the span of nine years. Tr. 40. Swain stated that although

---

[6]     When a claimant applies for disability benefits, the state agency creates a record. The record includes the claimant's medical evidence. A state agency disability examiner and a state agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the state agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the state agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

she has a driver's licenses and does not have any restrictions on her driver's license, she does not drive and instead opts to take paratransit that picks her up and takes her places. *Id.*

Swain testified that she does not work or volunteer, but she receives SNAP benefits and gets help from family to cover other expenses. Tr. 41. Her mother helps by going with her to get groceries and shop, along with other household tasks like cooking and folding laundry. Tr. 51. She explained that she applied for disability benefits because "I hear things, I see things, I'm constantly checking things … feeling like something bad is going to happen and I can't stop something until I have that feeling to let go, which doesn't allow me to do as much as I can. Like, I can't get things done on time, because I don't know which one of my, which battle I'm facing first." Tr. 45. She also described depression and anxiety and said that she "can't really focus." Tr. 46. Additionally, she stated that she has "extreme" paranoia. Tr. 49.

**ALJ Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 25, 2022, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; attention deficit hyperactivity disorder; and post-traumatic stress disorder (20 CFR 416.920(c)).

9

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 410.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels provided the work involves simple, routine tasks, and provided the work does not have to be performed at a production rate pace, and provided the claimant does not have to have more than occasional and superficial interactions with the public (no arbitration/negotiation/confrontation).

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on January 29, 1975 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since August 25, 2022, the date the application was filed (20 CFR 416.920(g)).

Tr. 7–27. [7]

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.    Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.    Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.    Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is

---

[7]    The residual functional capacity ("RFC") is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

disabled. If not, the ALJ proceeds to the next step.

4.    What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.    Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains

12

'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 103 (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Analysis**

Before turning to the arguments Swain makes in support of her two issues, it bears noting that the ALJ did not find persuasive Counselor King's medical opinions. *See* Tr. 21, 26. And, even assuming that the documents

created by Counselor King constitute *medical opinions* as that term is defined,[8] the ALJ was not obligated to include limitations opined by a physician or medical provider, let alone Counselor King's non-persuasive findings, as part of Swain's RFC. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (rejecting the argument that an ALJ erred by giving "no weight to nearly all the physicians' opinions regarding Mokbel-Aljahmi's ability to stand, walk, or reach"); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding").

> 1. *The ALJ did not "distort[] evidence" or otherwise err when she determined that Swain did not have the severe impairment of "psychotic disorder."*

Swain's first argument is that the ALJ erred "when she found that there was an 'insufficient evidence' to conclude whether Ms. Swain's severe impairments included a disorder in the psychotic spectrum." Doc. 8, at 10. Specifically, Swain argues that her "application for disability benefits and the medical record demonstrates very substantial evidence of psychotic symptoms." *Id.* at 11. And she says that the ALJ "cherry picked" certain evidence by not considering evidence in the record that Swain believes showed

---

[8]    A *medical opinion* is defined as "a statement from a medical source about what [claimants] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their ability to perform the physical, mental, or other demands or work. 20 C.F.R. § 404.1513(a)(2).

psychotic symptoms and "break downs." *Id.* at 12. Swain acknowledges that the ALJ *did* find that Swain experienced the severe impairments of depression, bipolar disorder, anxiety, OCD, ADHD, and PTSD. *See id.* at 11 (citing Tr. 20).

As a preliminary matter, Swain fails to acknowledge that simply because she had other symptoms, or even other diagnosis from some providers, does not mean the ALJ was obligated to find that her impairments were severe. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition] … says nothing about the severity of the condition."); *see Baker v. Colvin*, No. 1:15-cv-910, 2016 WL 4128435, at *13 (N.D. Ohio Aug. 3, 2016) (a diagnosis alone does not establish that a condition is disabling, nor does it establish the extent, if any, of the functional limitations caused by the condition.").

*As to her first sub-argument*, Swain asserts that the ALJ "cherry picks evidence and isolates de-compensation episodes to arrive a predetermined ratification of a prior denial of disability." Doc. 8, at 10.

The substance of Swain's first sub-argument is better characterized as a challenge to the ALJ's weighing of evidence. In Swain's opinion, there is "very substantial evidence of psychotic symptoms." Doc. 8, at 1. To this end, Swain provides several examples of evidence she believes demonstrates psychiatric symptoms that "would presumptively affect any individual's capacity to perform substantial gainful activity, and th[at] ought to be considered when assigning the claimant's residual functional capacity." *Id.* at 11. Swain then

15

concludes that, since the ALJ did not reach the same conclusion as to her psychiatric symptoms, the ALJ necessarily "cherry pick[ed]" or "failed to consider" the evidence Swain cites. *Id.* at 12.

Swain's first sub-argument is flawed for at least two reasons. One, the fact that the ALJ reached a different conclusion than Swain proposes does not mean that the ALJ failed to consider the entirety of the evidence. The ALJ explicitly stated that she considered the entirety of the record. *See e.g.*, Tr. 20, 24, 26 (providing non-exhaustive instances where the ALJ stated she considered all of the evidence). Swain makes no compelling argument to contradict the ALJ's statements that she considered the entire record, so the Court will presume they are true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). Two, an ALJ's failure to cite specific evidence does not mean that an ALJ failed to consider that evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for [her] decision to stand."). Indeed, a duty to "consider" the evidence is different than a duty to "discuss" the evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of

16

evidence submitted by a party") (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Swain has not shown that the ALJ failed to *consider* all of the evidence.

*Swain's second sub-argument* is that the ALJ "grossly misstat[ed]" the record. Doc. 8, at 13. This argument is unfounded. Swain cites various instances in which the ALJ stated that "no evidence" supported certain degrees of functional limitations. *See* Doc. 8, at 13 (citing Tr. 21). Swain's argument is problematic because it takes the ALJ's statements out of context. For example, Swain states that the ALJ "asserted that there was 'no evidence' that the claimant's ability to understand and remember information had more than 'moderate' limitations." Doc. 8, at 14 (citing Tr. 21). The majority of Swain's second sub-argument follows this pattern of highlighting an instance in which the ALJ used the words "no evidence" or stated that she "did not find evidence." *See* Doc. 8, at 14–15. Oddly, Swain takes these phrases out of context and urges the Court to agree that the ALJ misstated the record without providing any context by which to gauge the ALJ's statements. But when read in context, the ALJ's statements are both appropriate and supported by explanation from the record.

Take, for instance, Swain's first citation to the ALJ's use of the phrase "no evidence." Doc. 8, at 13 (citing Tr. 21). The entirety of the ALJ's statement is as follows:

> Having considered all the evidence, I do not find evidence since October 13, 2021, showing the

17

claimant's mental impairments have caused any greater social functioning limitations. This was also the assessment of Drs. Swain and Johnston, the above-mentioned State agency psychologist who respectively reviewed this record on January 25, 2023, and May 13, 2023[.]

I find Drs. Swain's and Johnston's opinions on the above point to be persuasive for several reasons. First, no medical source, acceptable or otherwise, has identified evidence showing the claimant has had marked or extreme limitations with respect to the claimant's ability to interact with others. This includes Ms. King, the above-mentioned mental health counselor who checked boxes on a form on July 26, 2023, that would lead one to think the claimant had moderate social functioning limitations[.]

Drs. Swain's and Johnston's opinions are also internally supported, which adds to their persuasiveness. So does the fact that there is no evidence of marked or extreme social functioning limitations since October 13, 2021, the date Judge Beekman determined she was not disabled. To this point, I note the claimant's medical records since October 13, 2021, do not refer to significant and ongoing problems with respect to her ability to interact with others.

Tr. 21–22.

The ALJ cited evidence in the record that, in her weighing of the evidence, showed Swain could adequately interact with others, such as interactions with medical providers, the ALJ herself, and her activities of daily living. *See* Tr. 22. Contrary to Swain's argument, the ALJ did not just say there was *no evidence* in the record. Instead, the ALJ stated that there was no

18

evidence to support a particular degree of limitation and then backed up that statement with record citation and an explanation of how she weighed the relevant evidence. *Id.* Weighing the evidence is precisely what the ALJ is supposed to do. *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020)) ("this court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.").

And the evidence that Swain points to does not show that the ALJ "inaccurately mis-characterized the record." Doc. 8, at 13. For instance, the ALJ explicitly concluded that Counselor King's check-box form "would lead one to think the claimant had moderate social functioning limitations[.]" *Id.* So the ALJ's statement that there was *no evidence* of "marked or extreme" limitations in social functioning is not contradicted by Counselor King's findings. The ALJ's statements, when viewed in context, do not propose that there was literally *no evidence*; instead, the ALJ simply stated her conclusion that there was no evidence to support greater functional limitations than those she opined. *See* Tr. 21–23. Additionally, as the Commissioner highlights, although Swain faults the ALJ's review of the "medical" evidence, she largely relies on subjective, self-reported evidence to support her alternative interpretation of the evidence. *See* Doc. 10, at 9–15. While Swain's subjective symptoms are relevant to the ALJ's consideration of the record, her argument does not show

19

that the ALJ failed to consider those symptoms—nor does she explicitly argue that the ALJ erred to consider those symptoms under Social Security Ruling 16-3p.[9] Instead, she simply provides citation to those self-reports, and their memorialization in appointment records, to provide an alternative interpretation of the record. *See* Doc. 8, at 12–14.

For all of the reasons stated, Swain's first issue does not provide a basis for remand.

### 2. *The ALJ did not cherry pick findings from Counselor King's opinion.*

In her second issue, Swain asserts that the ALJ "erred by cherry picking the findings by the claimant's long-term mental health provider." Doc. 8, at 16.

---

[9]     Even if Swain did argue that the ALJ erred under Ruling 16-3p, that argument would fail. Social Security Ruling (SSR) 16-3 provides that an ALJ evaluates a claimant's subjective reports of symptoms by considering the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other relevant evidence. Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at 5-8 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)). The ALJ stated that she considered, for instance, Swain's activities of daily living, her ability to interact with medical providers and the ALJ, her lack of hospitalization and ability to follow prescribed medical advice, and "all the medical and non-medical evidence including all medical opinions." *See* Tr. 22–26. So the ALJ appropriately considered Swains subjective complaints.

Based on the language used, one would expect that that the analysis corresponding to Swain's second issue would singularly concern alleged "cherry picking" with regard to Counselor King's opinions and records. Swain, however, begins by arguing that the ALJ did not assign appropriate "evidentiary weight" to Counselor King's medical opinion. *Id.*

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining

21

factors. *Id*. "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at \*14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

To the extent that Swain argues that the ALJ failed to discuss the factors of supportability and consistency when evaluating Counselor King's check-box opinions, that argument fails on two levels.

First, nothing in Swain's issue statement indicated that she would challenge the ALJ's consideration of the supportability and consistency factors. So, this argument—assuming Swain is attempting to raise it—is not properly presented. *See* Doc.6, at 3.

Second, Swain does not discernably argue that the ALJ failed to consider either supportability or consistency. Instead, she offers her alternative opinion that Counselor King's opinions were "supported by the medical evidence, and internally consistent." Doc. 8, at 17. Swain asserts that the "ALJ did not acknowledge and review the intrinsic value of having detailed letters and evaluations" from Counselor King when the ALJ rejected Counselor King's check-box opinions for lack of support. Doc. 8, at 18. Swain provides nothing to show why this apparent "intrinsic value" is relevant to the ALJ's consideration of medical opinion evidence. And, when viewed as a whole, as it must be, the ALJ adequately analyzed Counselor King's opinion. In addition to repeatedly pointing out that Counselor King "did not cite specific evidence in support of

her opinions," Tr. 21, the ALJ commented that Counselor King simply "checked boxes," *id*. That makes Counselor King's opinion "patently deficient." S*ee Dollinger v. Comm'r of Soc. Sec.*, No. 22-3359, 2023 WL 1777386, at *4 (6th Cir. Feb. 6, 2023) (a checkbox form completed by a treating source which only contained a brief explanatory note for the assessed limitations "is the kind of 'vague and unhelpful' opinion that is patently deficient and could not have been credited by the Commissioner") (quoting *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) (doctor's reference to "testing" to support his conclusions on a questionnaire were "vague and unhelpful" and did not provide substantial evidence to support his conclusions)).

Perhaps in an effort to overcome the "patently deficient" nature of Counselor King's opinions, Swain later observes "a distinct level of hypocrisy with [the ALJ's] critique that King's opinion is deficient for its checkbox nature" because, according to Swain, the previous ALJ relied on check-the-box opinions. Doc. 8, at 19. But Swain ignores the fact that the ALJ held that the previous ALJ's decision, which adjudicated a portion of the time covered by her current application, is "final and binding." Doc. 7, at 22. Whatever the validity of the previous ALJ's determination, Swain didn't challenge and does not challenge this ALJ's determination that the first decision is "final and binding." Moreover, the current's decision to discount King's check-the-box opinion rests on firm legal ground. *See Dollinger*, 2023 WL 1777386, at *4.

The fact that, as Swain points out, there were multiple submissions from King is of little consequence. *See* Doc. 8, at 19. Swain provides nothing to support the hypothetical proposition that two check-the-box opinions are somehow better than one. And the assertion that King's letters should be read together with King's check-the-box opinions is unsupported by either (1) citation to show that the ALJ failed to do so (or that doing so was required), *see* Doc. 8, at 19; or (2) King's own letters, which (a) do not reference the check-the-box opinions and (b) are not referenced anywhere in her check-the-box opinions, *see* Tr. 288, 468–70, 587–88, 625. Additionally, Swain does not point to anything in the ALJ's opinion that shows the ALJ failed to appropriately consider King's letters or check-box opinions. She simply provides reasons to support a different interpretation of King's submissions. It is explicitly not, however, this Court's role to re-weigh that evidence. *Rottmann*, 817 F. App'x at 196.

Finally, while it's true that an ALJ may not cherry-pick facts to support a finding of non-disability by ignoring evidence that points to a disability finding, *see Gentry v. Comm'r*, 741 F.3d 708, 723–24 (6th Cir. 2014), what Swain dubs *cherry picking*, is better characterized as the ALJ's weighing of the medical and opinion evidence. The fact that an ALJ omitted certain evidence in one section of the decision doesn't mean that she cherry-picked evidence. Afterall, ALJs aren't "require[d] … to discuss every piece of evidence in the record." *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir.

Mar. 15, 2023); *see Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

Moreover, it is not clear whether Swain is actually arguing that the ALJ ignored or excluded certain evidence in an effort to find lesser limitations—i.e. cherry-picking. She instead appears to simply believe that that the ALJ should have placed more value on evidence that, Swain believes, showed a greater degree of impairment. *That* is not cherry-picking; it is a difference of opinion. Simply because the ALJ reached a different conclusion based on the entirety of the record does not mean that the ALJ cherry picked, or even reached a decision unsupported by substantial evidence. The ALJ is singularly responsible for weighing the evidence. *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann*, 817 F. App'x at 196. The ALJ said she considered the entire record, and Swain has provided nothing that demonstrates the ALJ failed to do so. *See Chemical Found., Inc.*, 272 U.S. at 14 ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). So, while it is entirely possible that some evidence could be construed to provide greater limitations, as Swain would understandably prefer, that does not mean the ALJ erred when she reached a different conclusion. It is possible for the record to support two different conclusions. *See Jones*, 336 F.3d at 477.

For all of the reasons stated, Swain's second issue does not provide a basis for remand.

**Conclusion**

For the reasons explained above, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated: August 12, 2025

<u>/s/ James E. Grimes Jr.</u>
James E. Grimes Jr.
U.S. Magistrate Judge